No. A–252. STEWART *v.* WAINWRIGHT, SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS, ET AL. Application for stay of execution of sentence of death, presented to JUSTICE POWELL, and by him referred to the Court, denied.

JUSTICE BRENNAN and JUSTICE MARSHALL, dissenting.

Adhering to our views that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Gregg* v. *Georgia*, 428 U. S. 153, 227, 231 (1976), we would grant the application for stay in order to give applicant time to file a petition for writ of certiorari, and would grant the petition and vacate the death sentence in this case.

JUSTICE STEVENS, with whom JUSTICE BRENNAN, JUSTICE MARSHALL, and JUSTICE BLACKMUN join, dissenting.

Roy Allen Stewart was convicted of first-degree murder in Dade County Circuit Court and sentenced to death. The Florida Supreme Court affirmed the conviction and sentence. *Stewart* v. *State*, 420 So. 2d 862 (1982), cert. denied, 460 U. S. 1103 (1983). The Governor signed Stewart's death warrant. Stewart filed a petition for postconviction relief under Florida Rule of Criminal Procedure 3.850, alleging ineffective assistance of counsel. The court stayed the execution, held an evidentiary hearing, and denied the petition. The Florida Supreme Court affirmed. *Stewart* v. *State*, 481 So. 2d 1210 (1985).

The Governor signed a second death warrant scheduling the execution for 7 a.m. on October 7, 1986. Stewart then filed a post-trial motion and application for stay of execution in the Florida Supreme Court, arguing that the State's administration of the death penalty violates the Eighth and Fourteenth Amend-

ments because capital punishment is imposed disproportionately on prisoners whose victims were members of the white race. This question is similar to those presented in *McCleskey* v. *Kemp*, No. 84–6811, and *Hitchcock* v. *Wainwright*, No. 85–6756, cases that are to be argued before this Court on October 15, 1986. The Florida Supreme Court denied Stewart's motion and application for stay, ruling that "Stewart did not raise this claim in his previous 3.850 motion, and he is procedurally barred from raising it in this petition." *Stewart* v. *Wainwright*, 494 So. 2d 489, 490 (1986). Stewart then filed a second motion for postconviction relief and application for stay in Circuit Court, raising the *McCleskey/Hitchcock* claim. The Circuit Court denied the petition and stay application. *State* v. *Stewart*, No. 79–6621, slip op., at 2 (Sept. 26, 1986). The Florida Supreme Court affirmed the Circuit Court's finding of a procedural bar, reasoning that Stewart had shown no justification for his failure to raise the *McCleskey/Hitchcock* claim in his first motion for postconviction relief. *Stewart* v. *State*, 495 So. 2d 164, 165 (1986).

On October 1, 1986, Stewart filed an application for stay of execution pending filing of a petition for certiorari with this Court. A majority of this Court today denies that application. Because this denial may rest, in part, on an incomplete application of the doctrine of procedural default, as recently set forth in *Smith* v. *Murray*, 477 U. S. 527 (1986), I respectfully dissent.

*Smith* requires that, before refusing to consider a state prisoner's constitutional challenge to his conviction and sentence on the ground of procedural default, a federal court must answer two separate questions: (1) As a matter of state law, is consideration of the claim foreclosed by a valid procedural bar? And (2) as a matter of federal law, notwithstanding the state procedural bar, would rejection of the claim result in a "fundamental miscarriage of justice?" *Id.*, at 538.

In *Smith*, a state prisoner failed to raise, on direct appeal of his conviction and sentence to the Virginia Supreme Court, his constitutional challenge to the prosecution's use of the testimony of a psychiatrist, to whom the prisoner had related information about a prior incident of deviant sexual conduct on a school bus. This Court, reviewing the denial of Smith's petition for federal habeas corpus relief, held that the prisoner had failed to demonstrate cause for his noncompliance with state procedural rules. The Court then proceeded to the second inquiry of whether appli-

cation of the doctrine of procedural bar would offend principles of justice:

> "As we noted in *Engle* and reaffirmed in *Carrier*, ' "[i]n appropriate cases" the principles of comity and finality that inform the concepts of cause and prejudice "must yield to the imperative of correcting a fundamentally unjust incarceration." ' *Murray* v. *Carrier*, [477 U. S. 478, 495 (1986)], quoting *Engle* v. *Isaac*, 456 U. S. [107, 135 (1982)]. Accordingly, 'where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.' *Murray* v. *Carrier*, [*supra*, at 496].
>
> "We acknowledge that the concept of 'actual,' as distinct from 'legal,' innocence does not translate easily into the context of an alleged error at the sentencing phase of a trial on a capital offense. Nonetheless, we think it clear on this record that application of the cause and prejudice test will not result in a 'fundamental miscarriage of justice.' *Engle, supra*, at 135. There is no allegation that the testimony about the school bus incident was false or in any way misleading. Nor can it be argued that the prospect that Dr. Pile might later testify against him had the effect of foreclosing meaningful exploration of psychiatric defenses. While that concern is a very real one in the abstract, here the record clearly shows that Dr. Pile did ask petitioner to discuss the crime he stood accused of committing as well as prior incidents of deviant sexual conduct. Although initially reluctant to do so, ultimately petitioner was forthcoming on both subjects. In short, the alleged constitutional error neither precluded the development of true facts nor resulted in the admission of false ones. Thus, even assuming that, as a legal matter, Dr. Pile's testimony should not have been presented to the jury, its admission did not serve to pervert the jury's deliberations concerning the ultimate question whether *in fact* petitioner constituted a continuing threat to society. Under these circumstances, we do not believe that refusal to consider the defaulted claim on federal habeas carries with it the risk of a manifest miscarriage of justice." *Id.*, at 537–538.

In this case, Roy Allen Stewart predicates his application for a stay of execution on a claim that "because the State of Florida has applied its capital sentencing statute in an arbitrary and capricious manner by allowing race to determine, in significant part, who will receive the death penalty, his sentence was imposed in violation of the Eighth and Fourteenth Amendments to the Constitution of the United States."* As noted, his claim is similar to the claims advanced by the petitioners in *McCleskey* v. *Kemp*, No. 84–6811, and *Hitchcock* v. *Wainwright*, No. 85–6756.

As a matter of Florida law, it appears that Stewart's claim is procedurally barred. No one, however, has yet carried out the second inquiry mandated by *Smith:* whether as a matter of federal law the refusal to consider his claim on the merits would constitute a "fundamental miscarriage of justice" if, as Stewart asserts, the fact that his victim was a member of the white race was a critical element in the decision to impose the death sentence upon him. No federal court has yet decided whether this claimed racially discriminatory factor, in the Court's words in *Smith*, served "to pervert the jury's deliberations concerning the ultimate question" whether he should be put to death.

Today the Court declines to grant Stewart's application for stay of execution even though his procedurally barred claims, if true, raise profoundly serious and as yet unresolved questions about the federal constitutionality of his capital sentence. Arguably, the Court's decision is justified by the facts that this case comes to us as a request for review of the Florida courts' denial of collateral relief and the "fundamental miscarriage of justice" inquiry can better be performed by a federal district court in a federal habeas corpus proceeding which Stewart may now commence. Nevertheless, in order to make sure that this critical inquiry may be performed before the case becomes moot, I would stay Stewart's execution until the Court has decided the *McCleskey* and *Hitchcock* cases.

I respectfully dissent.

---

*Application for Stay of Execution Pending Filing and Disposition of Petition for Writ of Certiorari to the Supreme Court of Florida, filed in the Supreme Court of the United States on October 1, 1986, App. 10 (Initial Brief of Appellant in the Supreme Court of Florida filed September 29, 1986).